UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL S.,[1]

                Plaintiff,        Civil Action No. 22-11964

v.                                          Stephen J. Murphy, III
                                          United States District Judge

COMMISSIONER OF                  David R. Grand
SOCIAL SECURITY,                  United States Magistrate Judge

                Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 15, 18)**

    Plaintiff April S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 15, 18), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

    For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act during the relevant time

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

period is not supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 18)** be **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 15)** be **GRANTED** to the extent it seeks remand, and that pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.     REPORT

### A.     Background

Plaintiff was 33 years old at the time of her alleged onset date of October 26, 2015.[2] (ECF No. 11-5, PageID.372). At 5'4" tall, she weighed approximately 167 pounds during the relevant time period. (ECF No. 11-3, PageID.122). She completed up to the 9th grade. (ECF No. 11-2, PageID.105). She lives with her husband and daughter. (*Id.*, PageID.98). Previously, Plaintiff worked as a server at a restaurant. (*Id.*, PageID.96). Plaintiff alleges a disabling condition of severe arthritis. (ECF No. 11-3, PageID.122-23).

After Plaintiff's application for DIB was denied at the initial level on June 29, 2018 (ECF No. 11-3, PageID.122-29), she timely requested an administrative hearing, which was held on October 29, 2019, before ALJ David Mason, Jr. (ECF No. 11-2, PageID.91-120). Plaintiff, who was represented by attorney Randall Phillips, testified at the hearing, as did vocational expert ("VE") Sandra Steele. (*Id.*). On January 22, 2020, the ALJ issued a written decision finding that Plaintiff was not disabled under the Act between her alleged

---

[2] For purposes of her DIB application filed on March 26, 2018, (ECF No. 11-5, PageID.372), Plaintiff's date last insured is March 31, 2021. Thus, the issue in this case is whether Plaintiff was disabled under the Act between October 26, 2015, and March 31, 2021.

2

onset date (October 26, 2015), and the date of the ALJ's decision (January 22, 2020). (ECF No. 11-3, PageID.130-43).

On November 6, 2020, the Appeals Council reviewed the ALJ's decision and issued an order vacating the decision and remanding the case back to the ALJ. (ECF No. 11-3, PageID.147). On remand, a second administrative hearing was held on May 25, 2021, before the same ALJ. (ECF No. 11-2, PageID.68). Plaintiff, who was again represented by attorney Phillips, testified at the hearing, as did VE Helen Topcik. (*Id.*, PageID.68-90). On June 30, 2021, the ALJ issued a written decision, finding that Plaintiff was not disabled under the Act between her alleged onset date (October 26, 2015), and her date last insured (March 31, 2021). (*Id.*, PageID.50-62). On June 27, 2022, the Appeals Council denied review. (*Id.*, PageID.35). Plaintiff timely filed for judicial review of the final decision on August 22, 2022. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any

3

> medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not

4

disabled under the Act. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity between October 26, 2015 (the alleged onset date) and March 31, 2021 (the date last insured). (ECF No. 11-2, PageID.53). At Step Two, the ALJ found that, during this period of time, she had the severe impairments of ankylosing spondylitis, osteoarthritis, lumbar spinal radiculopathy, degenerative joint disease of the knees, carpal tunnel syndrome, idiopathic peripheral neuropathy, insomnia, migraines, and obesity. (*Id.*). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*, PageID.54).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding that, through the date last insured, she was capable of performing sedentary work, with the following additional limitations:

> [T]he claimant can sit for six hours of an eight-hour workday. She can stand/walk for two hours of an eight-hour workday. The claimant requires the ability to change positions once per hour, standing from sitting and/or sitting from standing, for ten minutes at a time, remaining on task while changing positions. The claimant can occasionally climb ramps and stairs with handrails. She cannot climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, and kneel. She cannot crouch or crawl. The claimant must avoid exposure to hazards such as unprotected heights and the operational controls of dangerous moving machinery but can avoid ordinary hazards. The claimant must avoid concentrated exposure to extreme cold, heat, wetness, or humidity. She can frequently handle, finger, and feel bilaterally. The claimant can tolerate a moderate level of noise (light industrial to office setting). The claimant can tolerate occasional concentrated exposure to atmospheric conditions defined by the Selected Characteristics of Occupations (SCO) of the Dictionary of Occupational Titles (DOT). She cannot operate foot controls bilaterally, or drive in the course of her employment. The claimant can occasionally reach overhead, and can reach frequently in all other directions.

(*Id.*, PageID.55).

At Step Four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (*Id.*, PageID.60). At Step Five, the ALJ found, based in part on the VE's testimony, that during the relevant time period, given Plaintiff's age, education, work experience, and RFC, she was capable of performing unskilled sedentary work as an inspector (30,000 jobs nationally), sorter (25,000 jobs), and final assembler (35,000 jobs). (*Id.*, PageID.61). Thus, the ALJ concluded that Plaintiff was not disabled under the Act. (*Id.*, PageID.61-62).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only –

6

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D. Analysis**

In her motion for summary judgment, Plaintiff argues that the ALJ failed to properly consider her mental limitations in assessing the RFC.[3] Specifically, Plaintiff argues that

---

[3] Plaintiff also argues that the ALJ erred by failing to properly evaluate the opinion of consultative examiner Dr. Jason Greenlee, D.O., as well as her subjective complaints and testimony, in accordance with the Appeal Council's directives in its remand order. (ECF No. 15, PageID.875-80). Because the Court is recommending remand on other grounds, it need not discuss in detail

7

"[h]aving credited [Plaintiff's] mental limitations to the extent of causing mild mental limitations in concentration, persistence or maintaining pace, the ALJ's decision does not address how this finding was reconciled with his RFC finding [of no mental limitations]," which renders the ALJ's RFC finding unsupported by substantial evidence. (ECF No. 15, PageID.874).

Relevant here, at Step Two, the ALJ found that Plaintiff had a "medically determinable mental impairment of anxiety," which did "not cause more than minimal limitation in [her] ability to perform basic mental work activities and was therefore non-severe" because "[t]reatment for this issue was limited to psychotropic medication prescribed by [her] internist, and she reported improvement with medication." (ECF No. 11-2, PageID.53). As to the specific functional area of "concentrating, persisting, or maintaining pace," however, the ALJ determined that Plaintiff had "mild limitation," as she "did not allege any concentration difficulties, although she reported having only a one-hour attention span and not finishing what she starts," and because "[s]he was fully oriented during exams." (*Id.*, PageID.54).

As to the RFC, it is undisputed that the ALJ incorporated no mental limitations. In his RFC analysis, the ALJ noted that Plaintiff claimed in her function report that she "estimated that she could pay attention for one hour" and "stated that she did not finish what she started," she "established care with a new internist in April 2017" where "[a]nxiety was [] noted," and that, during another office visit in July 2017, "[i]t was noted

---

the merits of these arguments. On remand, however, the ALJ should give full and fair consideration to these issues.

8

. . . that she experienced panic attacks four times per week." (*Id.*, PageID.56). The ALJ also noted that, during a family medicine office visit in January 2018, Plaintiff "said Valium was working for her anxiety," and that around May 2019, Plaintiff "had been referred to Easter Seals for anxiety, but never followed up." (*Id.*, PageID.56-57).

Based on the above, Plaintiff argues that substantial evidence fails to support the ALJ's RFC finding because the ALJ did not provide a sufficient explanation as to why he omitted from the RFC his Step Two findings that Plaintiff had mild mental limitations in concentrating, persisting, or maintaining pace. (*See* ECF No. 15, PageID.875 ("Having credited Ms. Smith's mental limitations to the extent of causing mild mental limitations in concentration, persistence or maintaining pace, the ALJ's decision does not address how this finding was reconciled with the [] RFC finding."); ECF No. 20, PageID.915 ("Again, at issue is not whether the ALJ erred by finding mild mental limitations instead of a severe impairment or the degree of limitations alleged, but whether the ALJ fully and properly accounted for the mild mental limitations found by failing to incorporate any at all.")).

While "courts in this district have found that mild limitations do not *require* incorporation into an RFC assessment," *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 20217) (emphasis added), it is also clear that "identifying [mental] impairments as mild is no substitute for explaining why the RFC did not include any limitations stemming from the impairments." *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-13372, 2022 WL 4359541, at *3 (E.D. Mich. Sept. 20, 2022).

The recent Eastern District of Michigan case, *Rodriguez*, is instructive on an ALJ's

9

obligation to properly consider and sufficiently explain why paragraph B findings of mental impairments and the limitations stemming from such impairments, even those that are mild, were not included in the RFC. In sustaining the claimant's objection to a Report and Recommendation on this issue and remanding for further administrative proceedings, the Honorable Matthew F. Leitman aptly explained:

> In one of her objections, Rodriguez argues that the ALJ erred when she failed to state sufficient reasons for not including any limitations in the RFC related to her (Rodriguez's) mental impairments. [] The Court agrees. The ALJ addressed Rodriguez's mental impairments only once in the section of her decision describing Rodriguez's RFC, and that paragraph was limited to explaining why the ALJ believed that Rodriguez's impairments related to concentrating, persisting, or maintaining pace were mild. [] But identifying those impairments as mild is no substitute for explaining why the RFC did not include any limitations stemming from the impairments. Such a failure is troubling because the ALJ acknowledged that Rodriguez's "mild impairment[s]" related to her (1) "understanding, remembering or applying information" and (2) "concentrating, persisting or maintaining pace." [] If the ALJ believed that she did not need to account for these seemingly-meaningful (although admittedly mild) limitations in the RFC, the ALJ needed to explain the basis for that belief.
>
> The Commissioner counters that the ALJ did not need include such an explanation in her RFC. In support of that argument, the Commissioner relies on the report and recommendation issued in *Shamsud-Din v. Comm'r of Soc. Sec.*, 2017 WL 3574694 (E.D. Mich. July 24, 2017). [] In *Shamsud-Din*, the assigned Magistrate Judge explained that "courts in this district have found that mild limitations do not require incorporation into an RFC assessment." *Shamsud-Din*, 2017 WL 3574694, at *6 (internal quotation marks omitted; citing cases). And the Magistrate Judge in *Shamsud-Din* concluded that the ALJ did not err when the ALJ failed to incorporate the claimant's mild limitations into the RFC. *See id.*
>
> The Court declines to follow *Shamsud-Din* for several reasons. First, as the Commissioner acknowledges, "Shamsud-Din did not set down a black-letter law that mild mental limitations never require RFC limitations; rather, it reasoned the relevant issue in any case is simply

10

> whether the ALJ explained why the mild psychological findings did not affect the RFC." []  But here, the ALJ never made any effort to "explain[] why the mild psychological findings did not affect the RFC." Instead, the ALJ explained only why she believed that Rodriguez's impairments in concentrating, persisting, or maintaining pace were mild rather than moderate.  Second, courts have reached different conclusions with respect to an ALJ's duties in these circumstances. Indeed, *Shamsud-Din* noted that other courts have held that "if [an] ALJ believed that [a p]laintiff's mild limitation in social functioning did not translate into a non-exertional limitation, [the ALJ has] a duty to provide an explanation for that belief in his decision." *Shamsud-Din*, 2017 WL 3574694, at *6 (citing cases).  And at least one other Magistrate Judge on this Court has explained that "most courts hold that where an ALJ finds even mild limitations in concentration at step two, the ALJ must either incorporate this finding into his or her RFC or explain why these mild deficits do not translate into functional limitations." *Farahani v. Comm'r of Soc. Sec.*, 2022 WL 3216407, at *14 (E.D. Mich. June 15, 2022) (citing cases), *report and recommendation adopted at* 2022 WL 2872226 (E.D. Mich. July 21, 2022).  Finally, "[c]ourts in this district have also found [ ] that an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment may constitute reversible error where the ALJ makes no mention of the claimant's mental impairment in the RFC analysis." *Shamsud-Din*, 2017 WL 3574694, at *6.  Here, the ALJ did not sufficiently address Rodriguez's mental impairments in her RFC analysis.
>
> Under these circumstances, the Court concludes that a remand is required.  On remand, the ALJ shall either (1) explain why she omitted from the RFC any limitations related to Rodriguez's mild mental impairments or (2) include such limitations in the RFC.

*Rodriguez*, 2022 WL 4359541, at *3-4.

Other cases in this district have held the same as to an ALJ's obligation to fully consider even mild mental limitations in the RFC analysis and, if not incorporated into the RFC, provide a sufficient explanation for such omission; without such explanation, the Court cannot perform its substantial evidence review. *See, e.g., Hicks v. Comm'r of Soc. Sec.*, No. 12-13581, 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013) ("In determining

11

Hick's RFC, the ALJ was required to consider her mental impairment and, if he concluded that it caused no further work related impairments, state the evidence supporting his conclusion. Because the record does not indicate that the ALJ did so, the court cannot conclude that his finding that Hicks can perform her past relevant work is supported by substantial evidence."); *Biehl v. Comm'r of Soc. Sec.*, 2015 WL 736366, at *21 (E.D. Mich. Feb. 20, 2015) ("[A]lthough the ALJ was arguably not required to *incorporate* mild limitations into plaintiff's RFC, she was required to *consider* those limitations in formulating plaintiff's RFC, and it is not evident from the ALJ's opinion that she did so. Indeed, the ALJ's RFC assessment is silent as to plaintiff's mental limitations."); *Farahani v. Comm'r of Soc. Sec.*, 2022 WL 3216407, at *14 (E.D. Mich. June 15, 2022) ("As Plaintiff correctly notes, most courts hold that where an ALJ finds even mild limitations in concentration at step two, the ALJ must either incorporate this finding into his or her RFC or explain why these mild deficits do not translate into functional limitations") (citing cases); *see also White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009) ("Although the ALJ did not err in finding that White's mental impairment was not severe, the ALJ gave no explanation for totally discounting the objective evidence of White's mental impairment in determining White's RFC.").

Here, it is, at best, unclear whether the ALJ considered Plaintiff's mild mental limitations in concentrating, persisting, or maintaining pace when formulating the RFC, as the ALJ did not provide any explanation as to why the RFC contained no limitations related to that domain. As detailed above, at Step Two, the ALJ found that Plaintiff had mild limitations in concentrating, persisting, and maintaining pace because she "reported having

12

only a one-hour attention span and not finishing what she starts." (ECF No. 11-2, PageID.54). Despite noting the same in the RFC analysis that Plaintiff estimated being able to pay attention only for one hour and not being able to finish what she started, and despite expressly stating that "[t]he following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis," the RFC excludes the ALJ's "paragraph B" finding of mild limitations in concentrating, persisting, and maintaining pace without explanation. (*Id.*, PageID.54, 56).

Indeed, the only discussion in the RFC analysis that touches on Plaintiff's mental functioning are the ALJ's statements that anxiety was noted during office visits; that Plaintiff experienced panic attacks; that Plaintiff "said Valium was working for her anxiety"; and that Plaintiff "had been referred to Easter Seals for anxiety, but never followed up." (*Id.*, PageID.56-57). But references to treatment notes diagnosing an anxiety disorder and documenting panic attacks generally favor Plaintiff, and the ALJ's remaining two statements as to Valium and Easter Seals at most explain why the ALJ found Plaintiff's limitations in concentrating, persisting, or maintaining pace to be mild, not why the ALJ excluded from the RFC his own Step Two finding of mild limitations in that domain. Moreover, the ALJ's reliance on Plaintiff's statement that "Valium was working for her anxiety" during an office visit in January 2018 raises concerns because the same treatment note reflects that Valium was *discontinued* during that visit and Plaintiff was instead prescribed Buspirone for her anxiety, which she continued to be prescribed throughout at least 2018 and 2019. (ECF No. 11-7, PageID.577-78 (treatment plan for "anxiety" stating "d/c valium" and "start buspar 7.5 BID")); (*see, e.g., id.*, PageID.575

13

(primary care provider Dr. Herbert Isaac, M.D., diagnosing anxiety disorder and to "[c]ontinue Buspirone 7.5mg T PO QD" for anxiety"); PageID.571 (office visit with Dr. Isaac on March 20, 2018, diagnosing Anxiety and prescribing continued use of Buspirone); PageID.568 (same on April 12, 2018); PageID.565-66 (same on May 10, 2018); PageID.562 (same on June 7, 2018); PageID.599 (noting Dr. Isaac refilled Buspirone for anxiety 4 times since January 16, 2018, until December 13, 2018); PageID.601-02 (January 11, 2019, treatment note reflecting Dr. Isaac diagnosed Anxiety and prescribed Buspirone). Finally, while the ALJ states that Plaintiff "never followed up" for her referral to "Easter Seals for anxiety," the fact that Plaintiff was initially referred to such services by Dr. Isaac in December 2018, and when she failed to attend, referred again five months later in May 2019 suggests that her anxiety was problematic enough to warrant this form of additional treatment. (*See id.*, PageID.604-05 (December 13, 2018 treatment note by Dr. Isaac, stating "REFER TO COUNSELING" for anxiety in December 2018); PageID.670-71 (May 13, 2019 treatment note by Dr. Isaac, stating "Anxiety Easter Seals Referral Redone Pt Never Went."). In sum, a fair reading of the ALJ's decision reflects the absence of a sufficient explanation as to why the ALJ omitted findings of mild limitations in concentrating, persisting, or maintaining pace from the RFC, and casts doubt as to whether the ALJ's RFC assessment fully and properly considered Plaintiff's mild mental limitations in combination with those other limitations stemming from her severe physical impairments. *Rodriguez*, 2022 WL 4359541, at *3-4.

The Commissioner's arguments to the contrary are unavailing. First, while the Commissioner argues that "Plaintiff never alleged any disabling mental impairment in

connection with her application for benefits" (ECF No. 18, PageID.891), it is undisputed that the ALJ expressly found based on his review of the record evidence that Plaintiff suffered from a "medically determinable mental impairment of anxiety" that, while non-severe, caused mild limitations in Plaintiff's ability to concentrate, persist, and maintain pace (ECF No. 11-2, PageID.53-54). The issue isn't whether Plaintiff alleged her mental impairment was *itself* disabling, but whether the ALJ properly considered whether that impairment caused limitations that needed to be reflected in Plaintiff's ultimate RFC.

Second, the Commissioner's argument that "substantial evidence supports the ALJ's finding of a non-severe mental impairment" similarly misses the point of Plaintiff's argument. Again, as in *Rodriguez*, Plaintiff argues, "the issue here is not whether the ALJ's finding that [Plaintiff's] medically determinable impairments of depression and anxiety were not severe impairments; rather, the issue is whether the ALJ properly accounted for his own prior finding of mild mental limitations in the domain of concentrating, persisting, or maintain pace, in assessing [Plaintiff's] RFC." (ECF No. 20, PageID.911-12). Indeed, the Commissioner acknowledges that the ALJ "reasonably found Plaintiff's anxiety to be a [medically determinable] non-severe impairment" that caused "mild restriction in concentrating, persisting, or maintaining pace" (ECF No. 18, PageID.893), and so the salient issue is whether the ALJ sufficiently explained why, notwithstanding his finding of such mild restrictions, no corresponding limitations were included in the RFC.

Third, the Commissioner argues that the "paragraph B criteria . . . are too broad to establish what an individual can still do despite her impairment," and that "an assessment of a mental RFC requires more detailed analysis of specific functions contained with the

15

broad areas of the paragraph B criteria—*i.e.*, the RFC requires a 'function-by-function' analysis of what an individual can do." (ECF No. 18, PageID.894). While the Commissioner accurately states the law, applied here, it supports Plaintiff's argument that the ALJ was required to provide a "more detailed analysis" of her mental impairment and limitations when assessing the RFC, but failed to do so. The Commissioner's argument that "the ALJ's decision contains the sought-for explanation" lacks merit as the Commissioner points solely to statements the ALJ made in *the paragraph B analysis*, which bolsters Plaintiff's contention that the ALJ failed to provide a "more detailed" discussion of her mild limitations in concentrating, persisting, and maintaining pace *in the RFC analysis*, much less explain why undisputed findings of mild limitations in that domain were ultimately omitted from the RFC. (ECF No. 18, PageID.895; *see* ECF No. 11-2, PageID.53-54). And, as discussed above, *see supra* at 13-14, one of the ALJ's principal considerations in the Paragraph B analysis – that Valium "was working" for Plaintiff's anxiety – appears to ignore that Plaintiff was taken off Valium and put on Busiprone for her anxiety. Simply put, at least without a more thorough explanation by the ALJ, the Court cannot say that the ALJ's stated reasons at Step Two for finding *mild* limitations in concentrating, persisting, and maintaining pace are the same reasons supporting the ALJ's RFC finding that Plaintiff had *no* mental limitations.

  Finally, while the Commissioner argues that "it is not that the ALJ somehow overlooked or excluded mental limitations from the RFC – no mental limitations existed," caselaw such as *Rodriguez* makes clear that, if ultimately no mental limitations existed in the RFC despite finding mental limitations at Step Two, the ALJ was required to provide

16

a sufficient explanation as to "why []he omitted from the RFC [the] limitations related to [Plaintiff's] mild mental impairment[.]" *Rodriguez*, 2022 WL 4359541, at *3-4. To the extent the Commissioner argues that cases like *Rodriguez* involved "evidence supporting the mental impairments" that was "not so unilateral, which is not the case here," such argument again misses the salient point that where the ALJ found mental impairments and limitations at Step Two based on the record evidence,[4] but then failed to incorporate those limitations into the RFC, he was required to provide a sufficient explanation for the omission. *See id.* at *3 ("If the ALJ believed that she did not need to account for these seemingly-meaningful (although admittedly mild) limitations in the RFC, the ALJ needed to explain the basis for that belief."). The ALJ failed to do so here.

In sum, because the ALJ found that Plaintiff had mild mental limitations in

---

[4] In any event, the Commissioner concedes that substantial evidence in the record supports the ALJ's finding of a non-severe mental impairment that causes mild restriction in concentrating, persisting, or maintaining pace. (ECF No. 18, PageID.893); *see, e.g.*, (ECF No. 11-7, PageID.583-84 (April 17, 2017, diagnosis of anxiety during office visit with primary care provider Dr. Herbert Isaac, M.D.); PageID.649-53 (July 2017 office visit with Dr. Benjamin Kaplan, D.O. for "long standing history of panic attacks," "high anxiety," "depressed or hopeless (more than half the days)," and "feeling down," a PHQ-9 score of "10" indicating "moderate depression," and a diagnosis of anxiety.); PageID.635-37 (October 2017 office visit with Dr. Kaplan diagnosing anxiety and prescribing Valium); PageID.580 (December 2017 office visit with Dr. Isaac diagnosing "Anxiety" and "Anxiety disorder"); PageID.577-78 (January 2018 family medicine visit diagnosing anxiety disorder, discontinuing Valium, and prescribing Buspirone); PageID.575 (February 2018 office visit with Dr. Isaac diagnosing anxiety and prescribing Buspirone); PageID.571 (same on March 2018); PageID.568 (same on April 12, 2018); PageID.565-66 (same on May 10, 2018); PageID.562 (same on June 7, 2018); PageID.599 (noting Dr. Isaac refilled Buspirone for anxiety 4 times since January 16, 2018, until December 13, 2018); PageID.605 (Dr. Isaac referring Plaintiff "to counseling" for anxiety in December 2018); PageID.601-02 (January 11, 2019, treatment note reflecting Dr. Isaac diagnosed Anxiety and prescribed Buspirone); PageID.670-71 (May 2019 treatment note by Dr. Isaac, stating "Anxiety Easter Seals Referral Redone Pt Never Went."); PageID.660-67 (anxiety diagnosis in June, July, and August of 2019); PageID.703-05 (same in September 2019)).

concentrating, persisting, and maintaining pace, but did not incorporate such limitations in the RFC, he was required to sufficiently explain the basis for such omission. Highlighting why the issue cannot be considered "harmless," the VE testified that, as to the sedentary jobs of inspector, sorter, or final assembler, "if an individual is consistently off task more than 10%, this would result in the loss of the job" (ECF No. 11-2, PageID.88), and it is not this Court's role to determine how a mild limitation in concentrating, persisting, or maintaining pace, in combination with the limitations stemming from Plaintiff's other severe physical impairments and medication side effects, would ultimately affect her ability to remain on task through a full 8-hour workday. Because the ALJ failed to sufficiently explain why he did not incorporate his finding of mild mental limitations into Plaintiff's RFC, the Court cannot conclude that substantial evidence supports the ALJ's RFC assessment, and remand is warranted. *Rodriguez*, 2022 WL 4359541, at *3-4.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 18)** be **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 15)** be **GRANTED** to the extent it seeks remand, and that pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: December 12, 2023  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 12, 2023.

                                                       s/Eddrey O. Butts
                                                       EDDREY O. BUTTS
                                                       Case Manager